IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOSE VASQUEZ § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:18-cv-340 |
| § | |
| JUSTIN LANDON § | |
|     *Defendant* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, JOSE VASQUEZ, Plaintiff, complaining of JUSTIN LANDON and for cause of action will respectfully show unto the Court as follows:

### I.     Parties

1.     Plaintiff Jose Vasquez is a resident of Tarrant County.

2.     Defendant Justin Landon is an individual residing in Fort Worth, Tarrant County, Texas and is a police officer with the City of Fort Worth Police Department and may be served at his place of employment at the Fort Worth Police Department located at 505 W. Felix, Fort Worth, TX 76115or wherever he may be found.

### II.     Jurisdiction and Venue

3.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.  Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391 because the Defendant is domiciled and/or resides in the Northern District of Texas, and all or a substantial part of the cause of action accrued in the Northern District.

### III.     Facts and Allegations

4. On the night of July 16, 2017, Officers of the Fort Worth Police Department, responded to a report involving Plaintiff, Mr. Vasquez.

5. The officers who responded were Officer Zachary Ferrell, #4242, Officer Charles Cook, #4158, Officer Taylor Rogers, #4300, Officer Colton Holland, #4384, Officer Richard Stutheit, #4266, and the Defendant, Officer Justin Landon, #4294.

6. As Mr. Vasquez was surrounded by four other officers, Defendant approached him.

7. As he approached, Defendant drew his Taser and put two laser points onto Mr. Vasquez.

8. Two other officers, Officer Cook and Officer Holland, were applying deadly cover with their department issued firearms as Defendant drew closer to Mr. Vasquez.

9. Officers commanded Mr. Vasquez to put his hands up in the air where they could see them.

10. Mr. Vasquez was holding a can of beer at the time, but raised his hands into the air.

11. Mr. Vasquez was never told to drop the can of beer.

12. Mr. Vasquez was surrounded by officers and standing still with both arms raised into the air in compliance with their orders.

13. After Mr. Vasquez complied with officer orders, Officer Cook holstered his weapon.

14. As Mr. Vasquez was complying with orders and in a defenseless position with both arms raised above his head, Defendant dropped his Taser and struck Mr. Vasquez in the face without warning or reason.

15. Mr. Vasquez fell immediately to the ground, where officers handcuffed him without issue.

16. Mr. Vasquez' nose was busted and bloody. Medstar paramedics and a supervisor were requested immediately. When Medstar paramedics looked at Mr. Vasquez, they believed his nose was broken.

17. Mr. Vasquez's nose was in fact broken as a result of the unwarranted and unlawful strike delivered by Defendant.

18. Defendant wrote a report of this incident, which deviated from the facts as they are seen in a body worn camera video from one of the officers.

19. In Defendant's report, he stated that "Officers continued to approach Jose while giving him verbal commands for him to show us his hands which he continued to ignore. Once close enough to Jose, I used an open hand strike to the face in order to distract him so that he could be taken into custody."

20. However, the video of the incident clearly shows Mr. Vasquez complying with officer commands to raise his hands prior to Defendant unlawfully and maliciously striking him in the face.

21. Defendant's actions and use of force were unreasonable under the circumstances.

22. Internal Affairs investigated Defendant's excessive use of force as well as Defendant entering inaccurate information in his police report which failed to document his use of force correctly by stating that Mr. Vasquez ignored verbal commands to display his hands prior to Defendant striking him.

23. According to the Internal Affairs report, Officer Cook commented "The strike, it looked a little bit bad" because Mr. Vasquez had just complied. His hands were

up at the point when he was struck in the face. Officer Cook stated, "I had holstered up and I was kinda moving in, just a little bit and then he delivered the strike, it caught me a little off guard."

24.   According to the Internal Affairs report, Officer Holland believed that Defendant only slapped Mr. Vasquez, which is not corroborated by the video. Officer Holland went on to say that he believed the slap was in order, but not a strike or a punch because at that time, Mr. Vasquez was not causing any type of a threat, he was just standing there. The video shows Defendant striking Mr. Vasquez, not slapping him.

25.   According to the Internal Affairs report, Officer Cook stated that there were at least four officers on scene which was enough to use de-escalation tactics.

26.   When asked during the Internal Affairs investigation if de-escalation techniques could have been used, Officer Ferrell stated that with so many assist officers, there could have been a different outcome.

27.   When asked by Internal Affairs about de-escalation attempts, Officer Rogers stated there were enough officers on scene and if they had pulled back and slowed down just a bit, it may have gone differently.

28.   When asked by Internal Affairs about de-escalation attempts, Officer Holland stated there were enough officers present on scene to use de-escalation techniques with Mr. Vasquez.

29.   However, when Defendant was questioned by Internal Affairs about de-escalation techniques that officers are required to utilize, he stated that he had not yet attended that class and not been instructed on those. Defendant admitted that more attempts could have been made to take Mr. Vasquez into custody without the strike.

30. Additionally, Defendant improperly took a picture of a bleeding and battered Mr. Vasquez on his personal cell phone and showed it to others.

31. When asked about the picture Defendant took of Mr. Vasquez, Officer Ferrell responded, "From my understanding, we are not supposed to be taking pictures like that on our personal cell phones, but I really can't speak for him."

32. According to the Internal Affairs investigation report, when asked about the picture Defendant took of Mr. Vasquez, Officer Cook became visibly nervous. Officer Cook related that it was one picture of Mr. Vasquez' bloody face. When asked what was said when it was shown, Officer Cook stated officers said, "That looks bad."

33. Defendant, a City of Fort Worth Police Officer, subjected Plaintiff to an objectively unreasonable amount of force thereby violating Plaintiff's rights against unreasonable seizures under the Fourth Amendment of the United States Constitution.

34. The Defendant was at all times acting under the color of law.

### Count One
### Excessive Force
### (42 U.S.C § 1983)

35. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 4 through 34 as if fully repeated herein.

36. Acting under the color of law, Defendant deprived Plaintiff of the rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force. By his use of force as described above, the Defendant has violated 42 U.S.C. § 1983 and the constitutional provisions cited therein.

37. The amount of force used by Defendant against the Plaintiff as described above, specifically but not limited to, when he struck Plaintiff in the face, without reason as Plaintiff was complying with officer orders to raise his hands, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Mr. Vasquez.

## IV.     Qualified Immunity

38. It is anticipated Defendant will raise, or attempt to raise, a defense of qualified immunity. In this regard, Plaintiff pleads that it was well-established law, well before July 16, 2017, that every citizen of the United States has a clearly defined constitutional right to be free from an unlawful seizure by law enforcement officials in accordance with the Fourth Amendment to the United States Constitution, as applied to the several States through the Fourteenth Amendment, and to be free from unlawful excessive force. No reasonable law enforcement official would have acted as Defendant did under these circumstances, by striking Plaintiff in the face, without reason, as Plaintiff was complying with officer orders to raise his hands.

39. The use of force was grossly excessive and unwarranted. The Defendant is not, therefore, entitled to the protection of qualified immunity for his actions.

## V.     Exemplary Damages

40. Plaintiff repeats and re-alleges the allegations contained in paragraphs 4 through 34 as though fully set forth herein.

41. When viewed objectively from the standpoint of Defendant, at the time of the occurrence, said Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

42. As a direct and proximate and producing cause and the intentional, egregious, malicious conduct by the Defendant, Plaintiff is entitled to recover exemplary damages in an amount within the jurisdictional limits of this Court.

## VI. Damages

43. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 4 through 34 as if fully repeated herein.

44. Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant's use of excessive and unreasonable force during the course of an arrest. As a result, Plaintiff is entitled to recover all actual damages allowed by law. Additionally, Plaintiff contends Defendant's conduct constitutes malice, evil intent, or reckless or callous indifference to the constitutionally protected rights of Plaintiff. As a result, Plaintiff is entitled to punitive damages.

45. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff was forced to suffer:

    a. Significant physical injuries;

    b. Physical pain and suffering in the past and future;

    c. Physical Impairment in the past and future;

    d. Disfigurement;

    e. Emotional distress, torment, and mental anguish in the past and future;

    f. Medical Expenses.

46. Pursuant to 42 U.S.C. § 1983 and 1988, and Texas Civil Practice & Remedies Code section 41.003(a), Plaintiff seeks to recover, and hereby requests the award of exemplary damages, reasonable attorney's fees, and costs of court.

## VII. Jury Request

47. Plaintiff respectfully requests a jury trial.

## VIII. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, for amount in excess of jurisdictional minimum of this court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

/s/ Scott H. Palmer
SCOTT H. PALMER
State Bar No. 00797196
J.R. FLETCHER
State Bar No. 24038304
JAMES P. ROBERTS
State Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
jr@scottpalmerlaw.com
james@scottpalmerlaw.com

Attorneys for the Plaintiff