# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSE VASQUEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 4:18-cv-00340-P |
| | § | |
| **JUSTIN LANDON et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Justin Landon's Motion for Summary Judgment (ECF No. 52), in which Officer Landon seeks summary judgment on the issue of qualified immunity—a defense asserted in response to Plaintiff Jose Vasquez's excessive-force claim. Also before the Court are Vasquez's Response (ECF No. 65) and Officer Landon's Reply (ECF No. 66). Having considered the motion, briefing, and applicable law, the Court finds that Officer Landon's Motion for Summary Judgment should be and hereby is **DENIED.**

## BODY CAMERA FOOTAGE

At the outset, the Court highlights the significance of the body camera footage submitted by Officer Landon. *See* ECF No. 55. In order to grant summary judgment, the Court must find that no reasonable juror could find that Officer Landon violated Vasquez's constitutional rights. Officer Landon characterizes the strike of Vasquez as a "distractionary slap," and Officer Landon claims it was acceptable conduct given the

situation. Upon viewing the video alongside the other summary judgment evidence, it is not clear to the Court that Officer Landon's conduct constituted an appropriate "distractionary slap" and was not an excessive use of force. Rather, the Court believes a jury needs to view this footage and other relevant evidence and live testimony to determine for themselves whether Vasquez's constitutional rights were violated. The presence of the fact issue created by the body camera footage is sufficient to deny summary judgment.

## BACKGROUND

### A.     Officer Landon's Account of Arrest

Officer Landon begins his factual account by introducing himself and the call that led to him being at the scene of the incident in question. Def.'s MSJ Br. at 3, ECF No. 53. The call happened at approximately 12:24 a.m. reporting that Vasquez was threatening his neighbor with a knife and Officer Landon was dispatched to the scene. Def.'s MSJ Appx., (Landon Decl.) at 1–2, ECF No. 54. Officer Landon then takes a break from describing this incident to describe another encounter that he had with Vasquez a month earlier as well as to recount Vasquez's day leading up to the arrest. *See* Def.'s MSJ Br. at 3–6.[1]

Officer Landon was the first officer to arrive on scene, shortly followed by two other officers. Def.'s MSJ Appx. at 1–2. Officer Landon approached Vasquez at the bed of a truck after being pointed in that direction by people yelling and pointing. *Id.* Vasquez

---

[1]The Court acknowledges the impact that an encounter a month prior may have on a police officer approaching a hostile situation. However, the relevance of Vasquez's activities during the day prior to the incident is not apparent to the Court especially because Landon did not learn of those things until depositions were being taken in this case.

matched the description Officer Landon had been given and Officer Landon recognized him from the earlier encounter. *Id.* Officer Landon recalls seeing Vasquez making a throwing motion, wondering whether Vasquez was throwing the reported knife, and being uncertain as to whether Vasquez was still armed. *Id.* Being unsure, Officer Landon pulled his Taser, pointed it at Vasquez, and repeatedly shouted for Vasquez to put his hands up. *Id.* at 7. Other officers arrived at the scene and issued similar commands. *Id.*

Officer Landon testifies it was at this moment that Officer Rogers's body camera began recording. Def.'s MSJ Appx. at 2, 10. He briefly explains the operation of the body camera and some of the lapses in audio. *Id.* Officer Landon also draws attention to the video showing him lead the effort to instruct Vasquez and deescalate the situation, mentioning that the other officers corroborate his claims that multiple instructions were given to Vasquez to put his hands up. *Id.*

Officer Landon recounts that Vasquez, who was "admittedly intoxicated" at the time, responded to the officers' instructions by putting his hands on the top of the bed of the pickup truck and just looking at Officer Landon. *Id.* Vasquez then reached into the bed of the pickup and picked up a beer, opened it, and took a sip, all while ignoring the officers' repeated demands to raise his hands. *Id.* During this exchange, Vasquez's sister is purported to approach while yelling at the officers and is told to get back by Officer Rogers. *Id.*

Officer Landon notes that he was getting close to a suspect who was possibly armed with a knife, who had allegedly threatened his neighbors that night, who was likely intoxicated, and who had a history of noncompliance with the police. *Id* at 3. Officer

Landon recognized that he did not know where the knife was, that the sister was approaching the scene and arguing with officers, and that there were other potential threats in the area as well. *Id.* The situation was tense, and Officer Landon felt the urge to detain Vasquez as quickly and effectively as possible. *Id.*

At this time, Officer Landon realized he was too close to Vasquez to deploy his Taser and that he would need to abandon that option. *Id* at 3, 18. Consequently, he dropped his Taser and chose to administer a "distractionary strike," as trained by Fort Worth Police Department, in order to subdue and gain compliance of suspects who are posing a threat and not complying with commands. *Id* at 3, 16–17, 84. This training teaches officers that such a strike can quickly gain compliance by startling a suspect and allowing other control tactics to be effectively employed. *Id.* Officer Landon describes the types of strikes the training included and that the training instructs officers to us "maximum force" in order to prevent the need for a second strike. *Id.*

Officer Landon describes his strike of Vasquez as "simple but forceful." Def.'s MSJ Br. at 10. According to Officer Landon, the strike was an open-handed slap across Vasquez's face that glanced across Vasquez's nose, causing a nose bleed. Officer Landon claims that the video and three still shots that he included in his brief clearly show that the strike was a slap and nothing more. Def.'s MSJ Appx. at 7. Following this "slap," Vasquez was put in handcuffs and arrested. *Id.* at 5. Officer Landon goes on to describe the post-arrest events, such as the paramedic diagnosis on the scene, the criminal matter that followed, and the reports filed by various. *See generally* Def.'s MSJ Br. at 12–16.

**B.      Vasquez's Account of Arrest**

On the night of July 16, 2017, six Fort Worth Police Department officers responded to a call involving Vasquez. First Am. Compl. 2, ECF No. 35. Vasquez was surrounded by four of these officers when Officer Landon approached him with his Taser drawn and pointed at Vasquez. *See* Body Camera Video, ECF No. 55. Two other officers also had their department-issued firearms drawn and pointed at Vasquez. *Id.* Vasquez was directed to put his hands in the air where the officers could see them. Vasquez asserts that he complied with these instructions even though he had a beer in his hand, which he was never instructed to drop. Pl.'s MSJ Appx. (Vasquez Depo.) at 135, ECF No 65-1.

After Vasquez complied with instructions, one of the officers holstered their firearm. *Id.* at 141–43. Officer Landon then dropped his Taser and struck Vasquez in the face "without warning or reason." *Id.* Vasquez fell to the ground where he was handcuffed without issue. Vasquez's nose was busted and bloody and the Medstar paramedics who responded believed that his nose was broken. Pl.'s MSJ Appx. at 47. Vasquez states that his nose was broken as a result of the strike from Officer Landon. Pl.'s MSJ Appx. at 68.

Vasquez claims that Officer Landon went on to falsify his report of the arrest by claiming that Vasquez was noncompliant with officer instructions and that is what prompted the "open hand strike." First Am. Compl. at 3. Vasquez goes on to describe the different reports and statements given following the incident which he then cites later during the summary judgment stage of this case. *See id.* at 3–6. Following the abovementioned events and investigation, Vasquez filed the current suit.

## PROCEDURAL BACKGROUND

Vasquez filed this suit on May 4, 2018. *See* ECF No. 1. On June 19, 2018, Officer Landon answered and asserted the affirmative defense of qualified immunity. *See* ECF No. 6. The Court subsequently issued a scheduling order outlining the deadlines for handling the qualified immunity defense. *See* ECF No. 9. The Parties filed a series of amendments to the Complaint and Answer (ECF Nos. 35 & 40, respectively). The Court set a dispositive motion deadline of June 30, 2019, and Officer Landon timely filed this Motion for Summary Judgment. Vasquez subsequently responded and Officer replied. The Motion has been fully briefed and is ripe for the Court's review.

## LEGAL STANDARD

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals Partnership*, 520 F.3d 409, 411 (5th Cir. 2008). "A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Norwegian Bulk Transp. A/S*, 520 F.3d at 411–12 (internal quotation marks and citations omitted).

The "usual summary judgment burden of proof" is altered when the movant asserts a qualified immunity defense. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). When a government official pleads qualified immunity, the burden shifts to the plaintiff to demonstrate the defense's inapplicability by "establishing a genuine fact issue as to

whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 537 F.3d at 253; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). The court must view all facts and reasonable inferences drawn from the record "in the light most favorable to" a plaintiff opposing the motion, but the plaintiff cannot rest on conclusory allegations or assertions. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016); *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012).

## OBJECTIONS

### A.    Objection 1

Officer Landon first objects to "virtually all of Plaintiff's summary judgment evidence." Reply at 1, ECF No. 66. The basis of this global objection is that all of Vasquez's appendix (ECF No. 51) should be struck because he did not underline, highlight, or cite to the entire 383-page appendix. *Id.* at 2. Officer Landon's first objection is **OVERRULED.**

### B.    Objection 2

Officer Landon next objects to pages 230–31 of Vasquez's Appendix, which contains deposition excerpts from the deposition of Officer Zachary Ferrell. Landon asserts that the questions posed to Officer Ferrell call for speculation and are not supported by personal knowledge, making the statements irrelevant. *See id.* at 3. The question asked, "[t]hat was not a slap, correct[,]" refers not to Officer Ferrell's own recollection of the night of the incident, but rather to Officer Ferrell's impression of the situation after viewing the video during the deposition. Asking the officer his impressions of what he saw in the video does not call for speculation and is not requiring the officer to make a response without

personal knowledge, as Officer Ferrell had in fact just watched the video. Therefore, Officer Landon's objection to pages 230–31 of Vasquez's appendix is hereby **OVERRULED.**

## C.    Objection 3

Finally, Officer Landon objects to Vasquez's attachment of the "typed notes of a detective" as exhibits to depositions. Reply at 3. Officer Landon argues that the typed notes, attached at pages 158–88, 252–82, and 353–83, are "hearsay, hearsay within hearsay, and not authenticated." *Id.* A nonmoving party is not required to produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017) (holding that at the "summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form"). Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. *Id.*; FED. R. CIV. P. 56. Accordingly, Officer Landon's objection to the typed notes is hereby **OVERRULED.**

## ANALYSIS

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). We

must determine (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* In the excessive force context, a constitutional violation is clearly established if no reasonable officer could believe the act was lawful. *See Manis v. Lawson*, 585 F.3d 839, 846 (5th Cir. 2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. However, deciding the two prongs in order "is often beneficial." *Id.*

Officer Landon contends the summary judgment evidence establishes he is entitled to qualified immunity under both prongs of the defense. To overcome the defense, Vasquez has the burden to direct the Court to evidence establishing a genuine dispute of material fact as to whether (1) Officer Landon "violated a federal constitutional or statutory right and that (2) the violated right was clearly established at the time of the challenged conduct." *Escarcega v. Jordan*, 701 F. App'x 338, 341 (5th Cir. 2017).

## A.      Violation of a Constitutional Right: Excessive Force Claim

With respect to the first prong, Vasquez alleges Officer Landon violated his Fourth Amendment right by using excessive force in apprehending and arresting him. To prevail on an excessive-force claim, a plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)).

1. <u>Injury/Causation</u>

The parties do not dispute whether there was an injury or what caused that injury. Vasquez contends that the strike by Officer Landon broke his nose. *See* Am. Compl. at 3, ECF No. 35. Officer Landon asserts that the only injury incurred by Vasquez was a minor bloody nose. *See* Br. Supp. MSJ at 12, ECF No. 53.  But regardless of the extent of the injury, there is no debate that Vasquez has set forth sufficient evidence to satisfy the injury element of his excessive force claim. *See* Appx. at 68, ECF No. 65-1.

Further, there is no dispute as to the cause of the injury. Neither Officer Landon nor Vasquez offer an alternate cause of Vasquez's injured nose, acknowledging that the injury was caused by the slap/strike from Officer Landon. Because it is clear that Vasquez suffered an injury to his nose and that the injury occurred due to the strike from Officer Landon, these elements of an excessive force claim are satisfied.

2. <u>Clearly Excessive and Clearly Unreasonable Use of Force</u>

Vasquez's excessive force claim is "analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 396 (1989). To determine the objective reasonableness of the force used, a court must balance "the amount of force used against the need for that force, taking the perspective of a reasonable officer on the scene without the 20/20 vision of hindsight." *Poole*, 691 F.3d at 628 (internal quotations omitted). Considerations include the severity of the offense, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect resisted or attempted to evade arrest. *Graham*, 490 U.S. at 396.

### a.     _Severity of the Crime_

On the night of the incident in question, Fort Worth officers were responding to a call alleging that Vasquez was threatening his neighbors with a knife. _See_ Br. Supp. MSJ at 3, ECF No. 53. The nature of the call on its own is enough to raise concern for Officer Landon as he approached this situation and weighs in favor of finding the use of a strike to the face reasonable.

### b.     _Immediate Safety Threat and Resisting Arrest_

There is evidentiary support that Vasquez posed an immediate safety threat to the officers or anyone surrounding him and whether Vasquez was resisting arrest or refusing to obey Officer Landon or any other officers' instructions. As noted above, responding to an aggravated assault call is accompanied by certain inherent dangers, and Officer Landon reasonably suggests that he was uncertain whether Vasquez still had the knife when he arrived on the scene and encountered Vasquez. _See id._ at 6, ECF No. 53. Officer Landon claims that Vasquez was noncompliant with his orders and refused to raise his hands in the air when directed to do so. _See id._ at 8, ECF No. 53. It is the totality of these circumstances—the environment, behavior, and "noncompliance"—that prompted Officer Landon to administer a "distractionary strike." Br. Supp. MSJ at 10, ECF No. 53. Vasquez counters with evidence that he did in fact have his hands in the air as instructed and that Officer Landon still struck him unexpectedly and for no apparent reason. Pl.'s Resp. at 6, ECF No. 65.

Although both parties provide testimonial evidence to bolster their case, the Court finds most compelling the body camera footage from the scene. The video shows Vasquez

surrounded by police officers, appearing to have his hands in the air, but it is unclear whether he is holding anything. *See* ECF No. 55. Seemingly out of nowhere, Officer Landon delivers a serious blow to Vasquez that the Court would not label as a distractionary slap. The Court fails to see any signs of danger from Vasquez or any attempt to resist arrest. Indeed, a jury could reasonably conclude that Vasquez was not actively resisting arrest and likewise that Officer Landon used excessive force by striking him. The Court believes that this evidence presents a genuine issue of material fact that precludes granting summary judgment in favor of Officer Landon receiving qualified immunity in this case.

**B.      Violated Right was Clearly Established**

The Court now turns to the second prong—whether the right violated was clearly established at the time of the violation. *Pearson*, 555 U.S. at 232. Case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018). The Fifth Circuit has found that a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest. *Id.* Officer Landon should have known that he could not have used that amount of force on a suspect such as Vasquez, who was arguably not resisting arrest. This right was clearly established at the time of Officer Landon's conduct.

Again, the issue of qualified immunity turns on the level of resistance and danger Vasquez exhibited. Based on the summary judgment record, a reasonable jury could find that Vasquez was not actively resisting arrest and thus that Officer Landon used excessive

force in striking him. For that reason, the Court finds that Officer Landon's Motion for Summary Judgment should be and hereby is **DENIED.**

## CONCLUSION

Because on this summary judgment record there is a genuine fact issue as to whether the Officer Landon's allegedly wrongful conduct violated clearly established law, the Court finds that Officer Landon's Motion for Summary Judgment should be and hereby is **DENIED.**

**SO ORDERED** on this **25th day** of **February, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE